Good morning. Appellant Anthony Collins appeals from a district court order granting summary judgment for Abbott Laboratories on his Minnesota Human Rights Act Failure to Accommodate claim. There are four main reasons why this order should be reversed. First, and perhaps most importantly, Abbott explicitly stated in its summary judgment motion that it was not disputing Mr. Collins' disability status and only raised the issue for the first time in its summary judgment reply brief. Because of that, Mr. Collins had no opportunity other than oral argument to respond to Abbott's disability arguments before the district court issued its order. By basing its order on an argument Mr. Collins was prohibited from responding to, the district court committed error. Second, the district court committed error in determining that as a matter of law, Mr. Collins wasn't entitled to accommodation. The court and Abbott both agree that Mr. Collins was substantially limited in major life activities from August 2016 to January 2017. This means as a matter of law that Mr. Collins has a record of disability. Under the 2008 amendments to the ADA, employees with a record of disability are entitled to reasonable accommodation, even if they are no longer substantially limited in a major life activity. The district court acknowledged in its order that this was the law, but admitted that it was not applying that law to the facts in this case. Third, the district court admitted that it did not consider any record evidence supporting Mr. Collins regarding his disability status or whether use of a manual pallet jack was an essential function of his job, claiming that it could not locate that evidence in the record. But the evidence was there, and by ignoring it, whether purposely or inadvertently, the district court erred. Fourth, the district court improperly construed all facts in Abbott's favor and impermissibly weighed evidence when considering whether the use of an electric lifting device is a reasonable accommodation that could have allowed Mr. Collins to do his job. This is a violation of the well-established summary judgment standard. Because of these errors of law and fact, summary judgment must be reversed and the case remanded to district court for further proceedings. Ms. Denny, did you concede before the district court that Mr. Collins wasn't disabled after January? No. Did you argue the record of disability? Did you make that claim below? Yes. In the oral argument before the court, the court asked whether persons who, like Mr. Collins, were substantially limited for a period of time in a major life activity were entitled to accommodation. And in that oral argument, I responded and stated that they were under the law. And so since Mr. Collins and the court and opposing counsel agree that he was substantially limited for that period of time, he ipso facto has a record of disability and therefore is legally entitled to accommodation. The reason that it was not more fully flushed out in the summary judgment written submissions is because that argument was raised for the first time only in the summary judgment reply brief. Had Mr. Collins been allowed to respond in writing to that, that could have been raised in writing and then more sufficiently flushed out for the appellate court because that opportunity was not allowed. It's not very fully developed in the record and for that reason alone must be reversed. So the court and Abbott claim that the disability arguments were waived even though that Abbott was allowed to reply to that in a summary judgment reply brief and even though Collins raised those issues at the oral argument. Under Eighth Circuit precedent, this means that it's not waived and those cases are Parker versus Carruthers and Watkins versus Chilkoot distribution. The district court based its ruling on these issues in its order which is another reason why this argument wasn't waived. Under Supreme Court precedent, the Supreme Court says that if a district court bases its order on an argument, whether or not raised below, it's appealable by the losing party and that's so the district court doesn't make rulings that aren't contemplated by either of the parties and thus would not be appealable which would be a strange result. And then finally, purely legal issues may be addressed on appeal whether raised below or not and this is a purely legal issue. The issue of whether Mr. Collins is entitled to a reasonable accommodation because he was substantially limited in a major life activity for a period of several months, whether or not he remained limited in those life activities after January 2017. With respect to the factual matters regarding his disability, the district court claimed that it had looked carefully in the record but could not find any facts supporting the fact that Mr. Collins was substantially limited in a major life activity after January 2017. However, the district court did not consider his deposition testimony. In his deposition testimony, he testified that he was not able to bend, lean or twist at all based on the instructions of his physician which prohibited him from using the manual pallet jack. He also testified that he was substantially limited in his ability to walk and stand and so he is substantially limited in major life activities to this day. But more importantly, regardless of what the court finds with respect to those issues, the fact remains that it's undisputed that he has a record of disability and people with a record of disability are entitled to reasonable accommodation, quote, if needed and related to the past disability. And so this was... What case are you citing there for that proposition? That is actually the regulations, 29 CFR section 1630.2 K3. Is there an Eighth Circuit case that holds that? There is not. It has not been addressed following the passage of the Amendments Act. Prior to the Amendments Act, that was not the law. But the Eighth Circuit law on that point was statutorily abrogated by the Amendments Act. And so Abbott claims that employees with a record of disability, there's a list in the regulations of the type of accommodations that employees may be entitled to if they have a record of disability. But that list begins with the words, for example, meaning that it is an illustrative, not exhaustive list.  With respect to the essential functions of Mr. Collins' job, Mr. Collins was able to perform the essential functions of his job following January 2017 with the accommodation of being allowed to use the electric walk-behind forklift or the electric lifting device. This is because there is a difference between the means  meaning that in this case, Mr. Collins' job was to move products around in a warehouse. And one of the means by which he could accomplish that was the electric... The accommodation that you're saying should have been offered is what, the electric forklift? Yes. Are you also arguing an electric pallet jack too, or just the forklift, the electric forklift? Yes, just the electric forklift. Unfortunately, there was confusion in the record regarding what was meant by... There's multiple terms that refer to that walk-behind forklift, which was electrically operated. My client referred to it as an electric pallet jack, but we concede that there were no electric pallet jacks at the facility. So what my client was referring to was the electric forklift. So with respect to whether the accommodation you're suggesting was reasonable, I think they raised some arguments about availability. Maybe there was only three at the entire facility, the batteries maybe not lasting very long, and then I think some safety concerns, that sort of thing. What's your response to that? So there was four buildings at this facility, three of which had an electric walk-behind forklift. One of them did not move products at that building. It was for other purposes. It held the clean room where people counted items and did other tasks besides moving products. So Mr. Collins could, in the other three buildings where he worked, use the electric forklift. The testimony supports that the electric forklifts were in wide and continuous use in all three of the other buildings, and there was no tasks that required the use of an electric pallet, of a manual pallet jack that could not be accomplished by an electric forklift, other than moving sterile products, which Mr. Collins did not do. The court said it had scoured the record but did not find any evidence supporting that. There's a long string cite in the court's order of the evidence that it looked at in considering and making that conclusion. However, that string cite left out the deposition testimony supporting Mr. Collins' position on that issue, and that is the depositions of Kenneth Brink, Mr. Collins' supervisor, and David Vasica, Mr. Collins' co-worker, who both testified that all tasks besides the sterile product could be accomplished by the electric forklift, rather than the manual pallet jack. In fact, most tasks could only be accomplished by the electric forklift because the manual pallet jack only lifted six to eight inches off the ground, and the electric forklift lifted up to all of the shelving. So for most tasks, the electric forklift, indeed, had to be used. And so Abbott's argument that there is an issue with safety cannot be the case because they were continuously in use. And so, you know, if it was a safety risk, it was certainly one that was disregarded every day by Abbott. And with respect to the battery being drained, Mr. Collins, I mean, they were in continuous use again, and so whether or not the battery may be drained was into now. If that was drained, Mr. Collins could have done other tasks that didn't require use of pallet jacks, such as entering information into the computers, counting products, that kind of thing. So that was an issue for all employees if the electric lift had the batteries drained. So if Mr. Collins had been allowed to use the electric forklift, as he had been doing and as others were routinely allowed to do, he could have been accommodated and, therefore, could have performed the essential functions of his job. So once that issue was reached, then it turns to whether— One question. Just one question for you. Do I understand correctly that generally the electric forklift was used to, I guess, bring products into the facility, and then within the facility moving around was the hand pallets, so to speak? Is that— Oh, I'm sorry. Do I understand that correctly? Is that— No. So the trucks would come into the facility itself, into like an open area within the building, and then the truck drivers themselves would unload the products onto the facility floor. And then from there, the workers for Abbott could come and move that product either with the electric forklift or with a manual pallet jack. And so bringing the products over to the shelves, then at that point, an electric forklift was the only machine that could be used to raise it up to the shelves. The manual pallet jack, again, only lifted six to eight inches off the ground. So the actual moving of the products from the trucks after they had been unloaded to the shelves could be accomplished by either. And there is deposition testimony in the record that says that, that the court admitted that it did not consider, claiming that it did not locate that in the record. And so that alone is grounds for reversal. Whether or not that accommodation was reasonable sort of plays into whether or not Mr. Collins could have been accommodated to perform the essential functions of his job. The court here said that it weighed, it improperly weighed the evidence and took inferences in favor of Abbott rather than Mr. Collins. Again, it can't be the case that there was a battery drainage issue or a safety issue when these devices were continuously in use at the facility. And the human resources representative in this case, who did not know at the time that there were these electric lifting devices in the room, in the buildings, said that had she known that, she would have concluded that he could have been reasonably accommodated or possibly could have been reasonably accommodated. And I believe that a jury would also be able to make that conclusion. And so therefore, since that is an inference that can reasonably be made, it must be construed in Mr. Collins' favor. I think that's all I have. I will yield the rest of my time to Ms. Markison, unless the court has other questions. I assume you'll save some for rebuttal. I do, yeah. Very good. I will happily take the next minute. I thought you might. You may proceed. Your honors, and may it please the court, JoLynn Markison appearing on behalf of the defendant, Apelli Abbott. To survive summary judgment on his claim for failure to accommodate under the Minnesota Human Rights Act, Collins had to make a facial showing that he was a qualified, disabled individual and that a reasonable accommodation was possible but was denied to him. Collins failed to make this showing and the district court correctly granted summary judgment. There are three paths this court can take to affirm that decision. First, you can affirm because the undisputed evidence shows that Collins was not actually disabled during the relevant time period, which is January 29, 2017, through his employment termination in July 2017. And therefore, he was not entitled to any accommodation at all. Second, if you choose to entertain Collins' new theory of the case, that he was entitled to an accommodation during the relevant time period because he had a prior record of a disability, you can still affirm because contrary to what counsel has told you, under the Minnesota Human Rights Act, only individuals who are actually disabled are entitled to reasonable accommodations. Third, regardless of where you come out on the issues of disability or record of disability, you can still affirm the trial court's decision because Collins was not qualified during the relevant time period. Specifically, the undisputed evidence is that the ability to move pallets with a manual pallet jack was an essential job function and that the use of an electric lift as opposed to a manual pallet jack was not, as a matter of law, a reasonable accommodation. I want to drill down deeper on each of these, starting with actual disability. First, contrary to counsel's assertion, Collins did, in fact, in his opposition brief, make an admission against his own interest. He stated, and I quote verbatim, Collins was substantially limited in the major life activities of lifting and standing from approximately August 29th, 2016 through January 29th, 2017, a time period of approximately five months. He again admitted this later on in his brief, saying that he was only actually disabled for a period of five months. Abbott was well within its rights to respond to that admission in its reply brief and to use that admission to show how Collins had essentially shot himself in the foot and could no longer recover on his claims. Didn't he also, though, testify that he's unable to stand for more than 30 or 40 minutes before he feels tingling in his legs and he's unable to extend his legs? Your Honor, his deposition testimony does not create an issue of material fact for two primary reasons. The first is that there is medical evidence in the record from his doctor. So we've got medical records and fitness for duty certifications that show after his injury, there was a long list of things he was prohibited from doing. He couldn't stand for more than a certain amount of time. That restriction was lifted in November, 2016. So his doctor determined that that was done. He couldn't lift a certain amount, which restriction was lifted January 29th, 2017. There were restrictions on pushing and pulling, which were lifted earlier in the fall and contained in no subsequent medical records. As of January 29th, from that long list of restrictions, the only remaining restriction was no manual pallet jack usage. And using a manual pallet jack is not an essential life function. Second reason why his testimony doesn't create a genuine issue of material fact is because the testimony itself isn't that he couldn't perform those functions. He merely testified that he had a tingling effect when he bent forward and twisted left or stood for more than 30 to 40 minutes. Immediately thereafter, he went on to clarify that he had one remaining restriction on his bodily movements and one restriction only, and that was no manual pallet jack usage. So even if you credit that deposition testimony, it doesn't create a genuine issue of material fact. That testimony was also given after he left employment and says nothing about what his restrictions were between January and July when he was terminated. That was his deposition testimony when his deposition was taken about his current condition. Under Minnesota Supreme Court case law, a major life activity is materially limited only when it is greatly impeded. So based on his deposition testimony, once again, a tingling effect is not a great impediment to bodily movement, and there is no record evidence suggesting that there was any material impairment to his ability to move other than that he couldn't use a manual pallet jack. So on this reason alone, you could affirm the district court's decision. You can also affirm, even if you credit counsel's argument about record of a disability, the case law is clear and remains good law despite her argument to the contrary, that under Weber, which is an Eighth Circuit case from 1999,  under the ADA and MHRA, as extended by subsequent courts, only employees who are actually disabled are entitled to reasonable accommodations. Nothing in the ADA abrogated that decision, contrary to what counsel has told you. In fact, in Duello versus Buchanan County Board of Supervisors, which is 628 F3D 968, it's an Eighth Circuit case from 2010, applying post-ADAAA law, the court explicitly rejected opposing counsel's argument that she urges you to apply today, rejected it and said, no, the ADAAA didn't now suddenly make record of plaintiffs able to obtain an accommodation. Weber is still good law and we must apply it. Accordingly, even if you accept her new theory of the case, it doesn't entitle Mr. Collins to any type of accommodation. Finally, regardless of whether you in fact find Collins was either actually disabled or that there was material dispute about whether he was actually disabled or had a record of disability, you can still affirm the district court's decision because Collins was not qualified and the undisputed evidence supports that. Specifically, it's important to understand the difference between a manual pallet jack and an electric lift. A manual pallet jack has two prongs that go out. It's very narrow. It's got a shaft that you pump up and down that increases the prongs so that they can lift up a pallet. You can maneuver it manually throughout the warehouse to move pallets. An electric lift is completely different. It is ginormous. It has, like a manual pallet jack, pretty much the only similarity, two prongs. The prongs go up and they go down. On either side of the two prongs, there are wide bars for counterbalance. It's incredibly tall. It's got a motor on the back. It's electric, battery-powered. It goes incredibly fast or has the ability to go incredibly fast, and its primary purpose is not to move things from point A to point B, although in some areas of Abbott's warehouse, it was permissible to do that, not in all. Its primary purpose was to lift items onto the shelving rack so that they could be put away. With that background in mind, using a manual pallet jack was an essential function, and the undisputed evidence supports that. In determining an essential function, this court is allowed to consider the employer's judgment, the written job descriptions, the amount of time spent performing the function, consequences if the employee doesn't have to or is not required to perform the function, and work experiences of past and current employees in the same position. Based on all of those factors, which we've laid out in our briefing, with citations to the record, all support the fact that use of a manual pallet jack was an essential function. The material handler position is an extremely physical position. Regardless of whether or not somebody has a disability, there are people who would not be able to do that job. Me, for instance. However, the job description makes clear that it's extremely physical. It's a functional role that includes material handling and that requires that materials be able to be moved and provided to required areas in a timely manner. It specifically states... Ms. Markinson, isn't the essential function really just the ability to move the product? Does it really matter how it's moved? So, opposing counsels made that argument. It's actually a distinction without a difference in this case. Regardless of whether you look at it as the essential function being able to move pallets from point A to point B, the question becomes how he was going to be able to do that. Arguably, a manual pallet jack itself was an accommodation that was given to all the employees because nobody can lift up a rack of pallets and move them without some type of equipment. The question becomes, you know, how is he going to do that? So, the only way to do that in many of the spaces in Abbott's warehouses was to use a manual pallet jack. So, even though he's made the argument, he hasn't suggested any way that he would be able to move pallets from point A to point B in areas where there was a lot of foot traffic and where it would have been unsafe and dangerous to allow a piece of electric equipment that is ginormous and moves incredibly fast to potentially put other people in danger or where there were many spaces that were too small to accommodate the electric lift. They were too narrow. The only way you could move those pallets was to go in with a manual pallet jack. There's been absolutely no suggestion and no evidence about how Collins could have performed those essential functions without using a manual pallet jack. So, really, it's a distinction without a difference in this case. And the reason he can't use the pallet jack again, he does not have the physical ability to operate the handle that raises the pallet? You know, the testimony on that isn't clear as far as why he was not able to do that. The testimony is clear that he's arguing there were all types of movements that underlayed his ability to use a manual pallet jack. But if you look at the actual medical restrictions, all of the blanket limitations on those particular movements were lifted as of January 29th, 2017. And his doctor said he only couldn't use a manual pallet jack. He could push and pull, bend, walk, stand using other tools like a trolley, a manual truck, a cart. He could have even pushed and pulled with his body. There was no restriction on that. It was simply on use of a manual pallet jack. He's presented no record evidence showing that a manual pallet jack wasn't an essential function. He says that he's provided evidence. But if you go and look at the actual testimony that he cited to, it says the opposite of what he says. And that is what the district court found. She scoured the record and looked at every piece of deposition testimony and even acknowledged that he was grossly mischaracterizing it. For instance, when he says there's no location or set of circumstances in which a manual pallet jack is required, if you go to the testimony of Vasika and Verank and read that testimony, it doesn't say that at all. In fact, it says the opposite. It says that there were specific areas where only a manual pallet jack was able to be used and where it would have been either unsafe to use the lift or where it wouldn't have been feasible due to size and space. And this wasn't limited to the one warehouse that council encouraged you to think it was. What's the vertical lift on a manual pallet jack? It can lift approximately six to 10 inches off the ground. So it really is designed to get into tight spaces and to move pallets from point A to point B. I'm trying to remember, visualize the pictures in the record of the pallet jack. It's small. It has two prongs. It has swivel wheels underneath. Correct. So I do want to mention one other thing. Ms. Denny mentioned testimony from the HR representative. Ms. Denny posed a question to that deponent during the deposition, asking her to assume that Michael Dwyer had lied to her and that there were electric pallet jacks available at Abbott's facility, not electric lifts. We're talking about electric lifts. There are two different pieces of equipment altogether. Asked her, assume that an electric pallet jack was available. Wouldn't that have been a reasonable accommodation? And after several minutes of going back and forth on it, Ms. Ross, I believe it was Ms. Ross said it could have been, but it was based on an incomplete hypothetical and it was about an entirely different piece of equipment. So it's a complete red herring. The undisputed evidence is that Collins needed to use a manual pallet jack and that due to safety concerns and size spacing issues, he could not use an electric lift as a substitute for this reason as well. The court should affirm the district court's grant of summary judgment because Collins was not qualified to perform his essential job functions. Thank you very much. Very well. Thank you, Ms. Markinson. Ms. Denny, would you like to use your minute of rebuttal? I would. Thank you. I believe that council and I have clear differences of opinion on whether or not Weber versus strip it is still good law. I would point out that the district court in this very case, acknowledged that persons with a record of disability are entitled to accommodation under the ADA amendments act, but declined to apply that to Mr. Collins claiming that he had not yet raised it again. I also would say that we have clear disagreements regarding what the factual record says. And so I think at this point, all that I can encourage the court to do is read the deposition testimony to see for itself, what it believes was said while there's conflicting evidence in the record regarding the use of a manual pallet jack and how widely the electric lift was used versus the manual pallet jack. I would just say that to the extent there's conflicting evidence, it must be construed in Mr. Collins fever under the established summary judgment standard. Thank you. Very well. Thank you. Counsel. Um, we appreciate your appearance today and your arguments and briefing case will be submitted and decided in due course.